UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAIZER KINSLEY, )
    *Plaintiff*, )
)
V. )
) Case No. 1:23-cv-1051
CITY OF WYOMING, MICHIGAN )
    *Defendant* )
And )
UNKNOWN POLICE OFFICERS )
JOHN DOES 1-6, individually and )
In their Official Capacities )
    *Defendants, jointly and severally* )
_____)

## PARTIES

1.    Plaintiff Kaizer Kinsley is an adult citizen of the State of Michigan.

2.    Defendant, The City of Wyoming (hereinafter the "City"), is a municipality located in Kent County Michigan. The City's police department responded to a call on June 1, 2023, at the Grand Rapids Inn Motel, located at 250 28th St SW, Wyoming, MI.

3.    Defendants Officers John Does 1-6 (hereinafter the "Police") are police officers of the City's Police Department and they were the responding officers to the call at the Motel on June 1, 2023.

## JURISDICTION AND VENUE

4.    Plaintiff alleges violations of the United States Constitution, including the Fourth Amendment of the Constitution, along with Civil Rights Act, Title 42 of the United States Code, Section 1983 and 1988.

5. Therefore, this Honorable Court possesses subject matter jurisdiction under Title 28 of the United States Code, Section 1331 and 1343, and supplemental jurisdiction over state claims pursuant to 28 of the United States Code, Section 1367.

6. Venue is proper because the acts complained of occurred in this District.

**FACTS**

7. On June 1, 2023, Plaintiff and some friends rented a room at the Grand Rapids Inn Motel, located at 250 28th St SW, Wyoming, MI (hereinafter the "Motel").

8. Plaintiff is a professional social media personality who makes his living from revenue earned by creating content and posting it on YouTube and other social media websites.

9. On June 1, 2023, Plaintiff had with him at the Motel his work equipment that he uses to create content (hereinafter his "work equipment"), including a laptop computer, a sony camera, two go-pro cameras, and a wireless microphone.

10. The total value of the equipment was approximately $5,500.

11. Plaintiff arrived at the Motel at approximately 7:00 PM.

12. Soon thereafter, at approximately 8:30 PM, a suspicious individual who Plaintiff had never met before in person, contacted Plaintiff through a social media app.

13. The suspicious individual was under the mistaken impression that Plaintiff was a minor.

14. Plaintiff immediately suspected that this suspicious person could be an online predator seeking to engage in illegal sexual activity with minors.

15. In an effort to be a good citizen and protect potential victims from sexual assaults, Plaintiff allowed the suspicious individual to continue in his mistaken belief that he was a minor and told the individual that he could come to the Motel to meet.

16. Plaintiff told the suspicious individual to come to the Motel with a pizza. Plaintiff did this so that if the suspicious individual actually came to the Motel with the intent to illegally engage in sexual activity with a minor, Plaintiff would be able to easily identify him from a safe distance and call the police.

17. Soon thereafter, one of Plaintiff's friends was in the Motel parking lot and saw a suspicious looking individual approach the Motel with a pizza.

18. Plaintiff's friend immediately called the police.

19. The suspicious individual with the pizza went to Plaintiff's Motel room.

20. In the Motel room, Plaintiff had his work equipment to create content for Plaintiff's job.

21. When the suspicious individual came to the Motel room, Plaintiff disclosed that he was not a minor.

22. Within minutes police officers, Defendants John Does 1 through 6, arrived at the Motel in response to Plaintiff's friend's call.

23. The police made no arrests and sent the suspicious individual on his way.

24. As the police left, they seized Plaintiff's work equipment and carried it to their police vehicles and drove away with the equipment.

25. Plaintiff never consented to the police seizing his work equipment.

26. By the time Plaintiff was even aware that the police had seized his work equipment, the police had already taken it from the Motel room.

27. The police seized his work equipment and were out the door of the Motel room before Plaintiff had a chance to object to the seizure.

28. The police never showed Plaintiff a warrant to seize anything.

29. Plaintiff was never told that he was under arrest or that he was suspected of any crime.

30. There were no exigent circumstances.

31. The seizure was not incident to any arrest.

32. No arrests have been made since June 1, 2023 based on the incident at the Motel that evening.

33. There is no valid reason that the police seized his work equipment on June 1, 2023.

34. Since the date of the unlawful seizure, Plaintiff has made numerous attempts to recover his work equipment from the Police and/or the City.

35. Plaintiff contacted the City through its official website and received no response

36. Plaintiff called the number for the Police and Public Safety listed on the City's official website 4 or 5 times. He left several voice messages and one message with a secretary but received no response.

37. Because the police took his work equipment, which includes a laptop computer and several digital cameras, the police have access to Plaintiff's private electronic data.

38. The police may have unlawfully and without a warrant searched through Plaintiff's private electronic data.

39. Plaintiff has been deprived of his work equipment now for several months.

40. The work equipment costs approximately $5,500.00.

41. Additionally, the work equipment contained video files that are extremely valuable to Plaintiff's work. For instance, Plaintiff would use footage of the incident that

occurred with the suspicious individual to create content, and that content would generate hundreds of thousands of views which would in turn generate substantial revenue for Plaintiff.

42. There were several videos on the cameras which Plaintiff intended to use for content that also would have generated revenue for Plaintiff.

43. Additionally, Defendants took Plaintiff's laptop which contained Plaintiff's personal and private information, as well as valuable files that are necessary for his work.

44. Plaintiff needs the seized equipment to produce the high quality videos that are the source of his livelihood.

45. Since the unlawful seizure and as a direct result of the unlawful seizure, Plaintiff's ability to earn a livelihood has been detrimentally impacted.

46. Plaintiff's videos typically attract over half a million views per video, and as a result Plaintiff's average monthly income from posted videos is between $10,000 and $15,000.

47. Plaintiff has earned significantly less income since the unlawful seizures as a direct and proximate result of the unlawful seizures, because he was deprived of the ability to post content from the electronic data in police custody, including but not limited to the content created on June 1, 2023.

48. Additionally, his ability to create content was substantially impacted by the seizure of his video cameras and laptop because the needs his work equipment to create quality content.

## COUNT ONE:
### United States Constitution
### 42 U.S.C. § 1983: Fourth Amendment
### Unlawful Search and Seizure
### All Defendants

49. The foregoing paragraphs are incorporated by reference as if set forth fully herein.

50. The Fourth Amendment of the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

51. Defendants have deprived and continue to deprive Plaintiffs rights guaranteed by the Fourth Amendment of the United States Constitution by searching and seizing Plaintiffs electronic equipment without a warrant.

52. As a direct result of the unlawful seizure, Plaintiff has incurred substantial damages.

## COUNT II
### Michigan Constitution, Art 1, § 11
### All Defendants

53. The foregoing paragraphs are incorporated by reference as if set forth fully herein.

54. Article 1 Section 11 of the Michigan Constitution states that "The person, houses, papers, possessions, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things or to access electronic data or electronic communications shall issue without describing them, nor without probable cause, supported by oath or affirmation."

55. Defendants have deprived and continue to deprive him of his right to not have his property and electronic data unlawfully searched and seized, as secured by the Michigan Constitution.

56. As a direct result of the unlawful seizure, Plaintiff has incurred substantial damages.

**COUNT III**
**42 U.S.C. § 1983, MONELL**
**Defendant City of Wyoming**

57. The foregoing paragraphs are incorporated by reference as if set forth fully herein.

58. Pursuant to 42 U.S.C. § 1983, as well as the Fourth Amendment to the United States Constitution and Article 1 Section 11 of the Michigan Constitution, Defendant City of Wyoming, through its Police Department, owed Plaintiff certain duties to supervise, monitor and train its officers to be aware of the proper protocols to use when searching and seizing a citizens possessions and electronic data, and the vital necessity to first obtain a warrant and to be mindful of the Constitutional rights of citizens.

59. Defendant City of Wyoming, in its representative and official capacity, has maintained a custom and policy of failing to train officers properly about citizens' constitutional rights and the necessity to obtain a warrant before searching and seizing possessions and electronic data, and as such, is not protected by governmental immunity when following such a custom and policy deprives individuals of their constitutional rights. *Monell v N.Y. City Det' of Soc. Serv.*, 436 658, 690-91, 692 (1978).

60. Defendant City of Wyoming was aware of the custom and practice of officers similar to the actions of the Defendant officers in this case, whereby officers search and seize citizens' possessions without first obtaining a valid warrant.

61. Defendant City of Wyoming owed Plaintiff the following duties and obligations: (1) to use caution; (2) to adequately and properly promulgate guidelines and policies that comply with the requirements of 42 U.S.C. § 1983 regarding searching and seizing possessions and electronic data and the need to first obtain a warrant to do so; (3) to adequately and properly train and supervise its police officers on the proper method of obtaining a warrant from a judge based on probable cause prior to searching and seizing a citizen's possessions and electronic data; (4)

to avoid hiring and selecting individuals who it knows or should know are incapable of performing their duties and responsibilities or who are likely to misuse their power; (5) for supervisors to not ratify unconstitutional conduct by its officers by failing to investigate such incidents when complaints are made, and failing to discipline them appropriately; (6) for failing to provide a reasonable means for citizens to recover possessions that are seized by police without a warrant.

62. The actions and omission of acts, and custom and policy by the Defendant under 42 U.S.C. § 1983 outlined above were done with deliberate indifference to Plaintiff's constitutional rights.

63. The actions and omissions and policy of the Defendant was a deliberate choice from various alternatives by the officials responsible for establishing final policy with the subject matter in question, to wit, preventing the unlawful search and seizure of possessions and electronic data.

64. The custom and policy increased the risk that Plaintiff's possessions and electronic data would be searched and seized without a warrant, and Defendant City of Wyoming was well aware of that risk, and despite being aware of this risk, Defendant acted with deliberate indifference and knowingly and unreasonably opted for a course of conduct that entailed a substantially greater total risk than the available alternatives.

65. The conduct of City of Wyoming Police Officers John Does 1 through 6, individually and as agents of the City of Wyoming, deprived Plaintiff of his clearly established rights, in violation of the Fourth Amendments of the Constitution of the United States, and of 42 U.S.C. § 1983.

.

**PRAYER FOR RELIEF**

Plaintiff seeks the following relief from the Court:

A. An order declaring that Defendants actions were unlawful;

B. An order directing Defendants to return Plaintiff's possessions that were seized on June 1, 2023;

C. An order directing Defendants to provide a report of what, if any, of Plaintiff's electronic data was accessed while Defendants possessions were in Defendants' custody;

D. An order enjoining Defendants from any further actions that deprive Plaintiff of his constitutional rights;

E. An order awarding Plaintiff against Defendants damages for injuries, including loss of revenue and compensation for any equipment that may have been damaged or destroyed while in Defendants' custody;

F. A judgment awarding Plaintiff against Defendants compensatory, statutory, nominal, and punitive damages;

G. A judgment awarding attorney's fees and court costs for this action;

H. Any other relief the Court judges to be proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in this action on all issues triable.

**[SIGNATURE ON THE FOLLOWING PAGE]**

Dated: October 4, 2023                                  Respectfully submitted

                                              **LAW OFFICE OF JONATHAN S GROSS**

/s/ Jonathan Gross
Jonathan Gross
Bar ID: 24133833
2833 Smith Ave., Suite 331
Baltimore, MD 21209
(443) 813-0141
jonathansgross@gmail.com